UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| TONG QI LU, )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>KEVIN JOYCE, )<br>*Sheriff,* )<br>*Cumberland County*, et al., )<br>)<br>        Defendants. | 2:26-cv-00041-SDN |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

On January 22, 2026, Petitioner Tong Qi Lu filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. He claimed his prolonged detention in federal immigration enforcement custody violated, among other things, the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1231(a), and 8 C.F.R. § 241.13. On January 23, 2026, the Court ordered his immediate release as a sanction after the Government directly violated this Court's orders by transferring Mr. Lu outside of the District of Maine.[1] ECF No. 12. The Court has evaluated Mr. Lu's habeas petition and **GRANTS** it.

### I.  Procedural History

Mr. Lu is a noncitizen who has lived in the United States for thirty-six years. ECF No. 1 at 1. He was born in China but forced to flee after participating in student-led democracy movements that triggered political persecution after the Tiananmen Square massacre. *Id*. at 13. In 1993, after arriving in the U.S., Mr. Lu applied for asylum, but the Government ultimately denied his application. *Id*. In 1996, the Government initiated

---

[1] Remarkably, ICE did not comply with the Court's release order; rather than releasing Mr. Lu immediately, ICE delayed his release until the following afternoon.

1

removal proceedings against him. *Id.* at 14. The following year, Mr. Lu married an American citizen and sought an I-130 immigrant visa petition as a "[noncitizen] spouse." *Id.* He did not, however, attend subsequent immigration hearings, and in 1999, the Government issued a final order of removal against Mr. Lu in absentia. *Id.* at 15.

For the next few decades, Mr. Lu lived and worked in New York, Massachusetts, and Maine; he currently owns a restaurant in northern Maine and has three children. *Id.* at 15–16. In 2020, U.S. Immigration and Customs Enforcement ("ICE") detained Mr. Lu and informed him he had to leave the country due to his 1999 final order of removal. *Id.* at 16. ICE officers also advised him that he could seek an I-130 petition for lawful permanent resident status once his eldest daughter turned twenty-one. *Id.* Mr. Lu was released on conditions of release, *see* ECF No. 14-8, and fully complied with all conditions, ECF No. 1 at 16–17. In 2023, his daughter filed an I-130 petition on his behalf, which is still pending. *Id.* at 17.

On April 5, 2025, ICE agents detained Mr. Lu in Bangor, Maine, and placed him into ICE custody at the Cumberland County Jail in Portland, Maine. *Id.* at 17, 18. Two days later, Mr. Lu received a Notice of Revocation of Release ("Notice of Revocation") from the Department of Homeland Security ("DHS"), which stated that the agency made "a determination that there are changed circumstances in your case." ECF No. 14-10 at 1. The Notice did not specify what those circumstances were. *See id.* In June or July of 2025, Mr. Lu completed a travel document application to facilitate verification of his Chinese nationality. ECF No. 1 at 19. The Government did not submit the travel document request to the Chinese government until October 2025, and it remains pending. ECF No. 20 at 3. ICE cannot submit a physical travel document request to the Chinese Embassy until the

Chinese government verifies Mr. Lu's nationality, which would preclude his physical transfer to China. *Id.*

Mr. Lu filed his habeas petition on January 22, 2026—292 days after ICE took him into custody. *See* ECF No. 1. He argues that his continued detention is unlawful because the law only permits re-detaining someone on supervised release if they violate release or if changed circumstances establish that removal is reasonably foreseeable. ECF No. 1 at 23–24.

On January 22 and 23, 2026, the Court issued not one but two orders enjoining the Government from removing Mr. Lu from the District of Maine while the merits of his habeas petition were pending.[2] ECF Nos. 3, 5. In direct violation of those orders, ICE transported Mr. Lu to a detention facility in Massachusetts. Following a conference of counsel on January 23, 2026, as a sanction for ICE's willful defiance of this Court's orders, the Court ordered Mr. Lu's immediate release in Massachusetts. ECF No. 12. ICE again violated this Court's order by delaying Mr. Lu's release until the following day, January 24, 2026.[3] ECF No. 20 at 1.

On January 23, 2026, the Court issued an order for the Government to show cause as to why Mr. Lu's detention was not unlawful. ECF No. 5. On February 3, 2026, the

---

[2] The Court issued an emergency order in the evening of January 22, 2026, enjoining Mr. Lu's transfer from the District of Maine for at least 72 hours from the issuance of the order. ECF No. 3. The next day, the Court indefinitely enjoined the Government from transferring Mr. Lu pending further order of the Court. ECF No. 5.

[3] Mr. Lu's release does not moot his habeas petition because the "in custody" requirement must be satisfied only at the time of filing. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "For a habeas petition to continue to present a live controversy after the petitioner's release or deportation, however, there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007) (quoting *Spencer*, 523 U.S. at 7). ICE's continued imposition of conditions of release over Mr. Lu are sufficient to present a live controversy. *See Palacio v. Hermosillo*, No. C25-1983, 2025 WL 4033287, at *2 (W.D. Wash. Dec. 22, 2025), *report and recommendation adopted sub nom. Quiva Palacio v. Wamsley*, 2026 WL 84930 (W.D. Wash. Jan. 12, 2026).

Government responded, urging the Court to find that it can lawfully detain Petitioner while his travel document request is pending with China. ECF No. 20 at 3. The Government also acknowledged, however, that it had no evidence to rebut Petitioner's claim that there is no significant likelihood of his removal in the reasonably foreseeable future. *Id.* at 3–4.

## II.  Analysis

Section 1231(a) of the Immigration and Nationality Act ("INA") authorizes DHS to detain noncitizens once their final order of removal becomes "administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). The statute requires that removal occur within a 90-day period, after which detention may continue only in limited circumstances. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (citing 8 U.S.C. § 1231(a)(1)(A)). After the period expires, the Government has discretion to detain only four categories of people: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Id.* at 579 (quoting 8 U.S.C. § 1231(a)).

Although the detention statute does not provide a specific time frame for how long a person may remain in discretionary detention after the 90-day period, the Supreme Court interpreted Section 1231(a) to mean the statute "does not permit indefinite detention"; it instead "limits a[] [noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). To obtain release, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the

4

reasonably foreseeable future." *Id*. at 701. The burden then shifts to the Government to "respond with evidence sufficient to rebut that showing." *Id*.

However, the *Zadvydas* framework no longer applies to Mr. Lu's circumstances. *Zadvydas* specifically concerns ICE's authority "to detain *in the first place* upon an issuance of a final order of removal." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) (emphasis added). Because Mr. Lu previously obtained release on conditions following a final order of removal, a different DHS regulation, 8 C.F.R. § 241.13(i), applies to his case.

Section 241.13 prescribes that ICE may revoke a noncitizen's release if he "violates any of the conditions of release" or if "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2). The regulation requires "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)). The Court, however, cannot make the individualized determination in the first instance; rather, it must review the determination "in light of the regulations instructing ICE on how it should make such a determination." *Id*. at 620. The Government carries the burden to show a significant likelihood that it will remove the noncitizen. *Hall v. Nessinger*, No. 25-CV-667, 2026 WL 18583, at *7 (D.R.I. Jan. 2, 2026) (collecting cases).

On April 7, 2025, ICE made an individualized determination that "there are changed circumstances in [Mr. Lu's] case." ECF No. 14-10 at 1. The Government provided no support for this conclusory assertion: the Government advanced nothing in the Notice of Revocation or in the Government's briefing to show how Mr. Lu's circumstances had

5

changed, nor did the Government allege he violated his conditions of release. Reviewing the dates at issue in this case, ICE did not provide Mr. Lu with a travel document application until two months after his initial detention, and the Government did not submit the application to the Chinese government until four months after that. Moreover, this application is a precursor to the issuance of actual travel documents: it exists to confirm his Chinese nationality, not to facilitate his physical removal. At no point before or during his detention did the Government have any reason to believe his removal would be imminent. Put simply, the Government has produced no facts which support a finding that ICE re-detained Mr. Lu based on changed circumstances that would make his removal significantly likely in the reasonably foreseeable future.

Section 241.13(f) sets out factors ICE must consider regarding the likelihood of removal, including "the history of the [noncitizen's] efforts to comply with the order of removal, the history of the Service's efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question." 8 C.F.R. § 241.13(f). Although it is not his burden, Mr. Lu has advanced ample evidence in the record that even after the submission of an application, the Chinese government remains "recalcitrant" and unwilling to accept its nationals for repatriation. *See* ECF No. 1 at 11–12; ECF No. 14-1 (Congressional report deeming China "uncooperative" in accepting removals from the U.S.); ECF No. 14-2 at 1 (In fiscal year 2023, ICE "only removed 288 Chinese nationals from the U.S. while it encountered tens of thousands of Chinese [noncitizens] at the southern border the same year."). The

6

Government, in turn, acknowledges it can advance no evidence to rebut Mr. Lu's assertion that China is unlikely to accept his removal. ECF No. 20 at 4. Courts have routinely refused to find the Government met its burden by offering "little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (collecting cases). Here, the Government has not even provided a generalization: it said only that his document request is pending with the Chinese government. ECF No. 20 at 3.

Taken altogether, it is clear to the Court that ICE's individualized determination to re-detain Mr. Lu failed to comply with 8 C.F.R. § 241.13(f). Where, as here, "an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and ICE fails to adhere to it, the challenged action is invalid." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quotation modified); *see Zadvydas*, 533 U.S. at 690 ("The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law." (quotation modified)). Re-detaining Mr. Lu is unlawful unless and until the Government has complied with all procedures set forth in Section 241.13 and carried its burden of showing removal is significantly likely in the reasonably foreseeable future.[4] *See Nguyen v. Andrews*, No. 1:26-CV-00015, 2026 WL 263058, at *7 (E.D. Cal. Feb. 2, 2026).

---

[4] Because the Court grants Mr. Lu's requested relief under 8 C.F.R. § 241.13, the Court does not reach the merits of his due process or Administrative Procedure Act claims. *See Rombot*, 296 F. Supp. 3d at 386–87 (declining to address petitioner's *Zadvydas* claims under 8 U.S.C. § 1231(a)(1)(C) when Section 241.13 applies); *cf. Dupont v. Meserve*, No. 25-CV-00593, 2026 WL 74112, at *3 (D. Me. Jan. 9, 2026) ("Finding [petitioner] has offered the Court good reason to believe there is no significant likelihood he will be removed in the reasonably foreseeable future and that Respondents have failed to rebut those good reasons [under *Zadvydas*], the Court need not address [petitioner's] due process or third country removal claims at this time.").

7

### III. Conclusion

Therefore, the Court **GRANTS** Mr. Lu's verified petition for a writ of habeas corpus. ECF No. 1. As previously ordered on January 23, 2026, the Court **ORDERS** that Mr. Lu shall remain out of custody, subject to his preexisting conditions of release. The Court **ORDERS** that the Government may not add new conditions of release without utilizing the administrative appeal process to amend the existing conditions. *See Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 69 (D. Mass. 2025) (ruling ICE's release conditions, including ankle monitoring, not present in the immigration judge's order violated Due Process). The Court further **ORDERS** the Respondents not to re-detain Mr. Lu absent a showing of changed circumstances for his re-detention. This Order does not prevent the Respondents from pursuing removal efforts in accordance with the law.

**SO ORDERED.**

Dated this 9th day of February, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**